### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT DECATUR,

### AUGUST TERM, 1851.

Present—JOSEPH H. LUMPKIN, ⎫
         HIRAM WARNER, ⎬ Judges.
         EUGENIUS A. NISBET, ⎭

---

No. 40.—NICHOLAS M. LEWIS, plaintiff in error, *vs.* JAMES R. REED, defendant in error.

[1.] Where a testator, by his will, devised to his wife his house and lot, in the town of LaGrange, during her *natural life or widowhood,* and also directed that "his wife should keep his house open to any of his children that may be or have been indigent or unfortunate:" *Held,* that the complainants, who claimed to be indigent and unfortunate children of the testator, were entitled to have the house kept open for their benefit during the natural life or widowhood of the testator's wife, and *no longer ;* and that to entitle them to maintain a bill in Chancery for relief, under the will of the testator, they must show affirmatively on the face of such bill, that the widow of the testator is *in life* and *unmarried.*

In Equity. Application to Judge HILL for an injunction.

The bill alleges that Nicholas Lewis, Sen. departed this life testate in the year 1847. By the second item of his will, he provided that complainants, who were children by a former marriage, should take no portion of his estate, except what should be especially pointed out in said will. By the third item, he

orders his estate to be divided among his younger children, (by a second wife,) as they shall arrive at age or marry. The fourth item is in these words : "I solemnly request that my wife would keep my house open to any of my children that may be or have been indigent or unfortunate." By the seventh item in his will, the testator gave his house and lot in LaGrange, and furniture, to his wife, during her natural life or widowhood.

His wife he appointed executrix, and the house was ordered to be sold on her marriage or death. The bill charges that complainants are the indigent and unfortunate children intended to be provided for in the 4th clause of the will ; that one is palsied, another a lunatic in the asylum, and the third entirely indigent ; that the testator intended, and did, by the fourth item in his will, charge upon his estate an adequate and reasonable support for said complainants, and that such was his intention by the words, "keep open my house," and that the injunction is to his wife in her capacity as executrix, and that this meaning was well known to all parties, and that it was admitted by all.

The bill alleges that the widow alone qualified as executrix, when the will was admitted to probate, and that during her administration, this construction of the will was admitted and observed for the space of three years ; that the administration of said executrix ceased and determined, how is not alleged ; that the defendant in error subsequently qualified as executor, and that he also for a time, and with the concurrence of all persons interested, observed and executed the will, according to this construction.

The complainants propose in their bill, to make this intention of the testator appear by parol evidence.

The bill further charges, that recently the executor has refused to continue such support, and is now seeking to sell the house and lot mentioned in the fourth item of the will.

The prayer is, that he be enjoined from discontinuing this support, and that a portion of the estate be set apart or be reserved by said executor, in trust, for the reasonable support of complainants.

Judge *Hill* refused to sanction the bill, on the grounds—

1st. Because the fourth item did not contain a bequest.

2d. That parol testimony was not admissible to prove such intention.

To which counsel for complainant excepted.

B. H. HILL, for plaintiff in error.

BULL & FERRELL, for defendant in error.

*By the Court.*—WARNER, J. delivering the opinion.

[1.] The only question presented by the record in this case is, as to the construction to be given to the second, fourth, and seventh clauses of the last will and testament of the late Nicholas Lewis, deceased. What are the rights of the complainants under these several clauses of the testator's will, as now claimed by them in their bill?

By the second clause in the will, the testator declares, that the complainants shall take no portion of his estate, except what shall be *hereinafter specially pointed out.*

By the 7th clause of his will, the testator gives to his wife, his house and lot in LaGrange, and his furniture, during her *natural life* or *widowhood.*

By the fourth clause of his will, the testator solemnly requests, that *his wife would keep his house open* to any of his children that may be, or have been indigent or unfortunate.

It is evident from the latter part of the second clause, that the testator had it in his mind, to make some provision for the children by his first marriage, which would be *specially pointed out* in his will. It being his intention also to give to his wife, the house and lot in LaGrange, and the furniture, during her natural life or widowhood, as he did so, by the seventh clause in his will, the fouth clause, *specially points out that provision*, which is, " that his *wife* would keep *his house open,* to any of his children that may be, or have been, indigent or unfortunate."

By " keeping his house open," we understand that the testator intended that such of his children as answered the descrip-

tion given in the fourth clause, should have the right and privilege to come into his house, and be maintained there with meat, drink and lodging, at the expense of his wife, to whom the house was given, so long as she continued to occupy it under the will. The testator said to his wife, by his will, I give to you my house and lot in LaGrange, and the furniture, during your natural life or widowhood, but you are to keep the house open to any of my children, "that may be, or have been indigent or unfortunate," so long as you continue to hold and occupy it under my will. So long then, as the wife of the testator remained in life a *widow*, she was entitled to the house and lot in LaGrange, and the furniture. The complainants, who claim under the fourth clause of the will, were entitled to enter that house, and be furnished with the necessary meat, drink and lodging, as the other members of her family, so long only as she continued to occupy and enjoy it.

That the testator did not intend the house should be kept open for the benefit of the complainants, for any longer period than the *natural life* or *widowhood* of his wife, we think, is very clear from the provisions of the will. The house and lot, as a matter of course, ceased to be under *her control* after her death, to be " kept open" *by her* for the benefit of the complainants; besides, it was only given to her during her *natural life* or *widowhood*, and by the third clause of his will, the testator directs, that if his wife should *think proper to marry again*, that his house and lands be sold *for the benefit of herself and his younger boys*, (to wit,) Robert, Oscar, Fitzallen, Warner, and Charles. When his wife should depart this life, her interest in, and control over the house and lot in LaGrange terminated, according to the will of the testator, for it was given to her only during her *natural life* or *widowhood*. If she married, then the house was to be *sold*, not for *the benefit of the complainants*, but for the benefit of his *wife*, and his *younger boys*.

The complainants then were entitled to have the house in LaGrange kept open for their benefit, under the fourth clause of the testator's will, during the *natural life* of the testator's wife, or her *widowhood*, and *no longer*. Whether the widow of the testa-

tor is dead, or has married again, does not appear on the face of this record; but it is alleged that the administration of the widow as *executrix,* has ceased and determined—which, by the will, was to cease and determine on her marriage.

But inasmuch as the right of the complainants to have the house kept open for their benefit, depends on the fact of her being in life and unmarried, *that fact* should have been *affirmatively* stated by the complainants, to entitle them to the assistance of the Court, which they now seek. The complainants must shew on the face of their bill that the widow of the testator is *in life* and *unmarried,* to entitle them to the relief prayed for under the testator's will, which *material* fact not being alleged, the application for an injunction was properly refused by the Court below.

Let the judgment of the Court below be affirmed.